# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *MB Financial Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077

---

| | |
|---|---|
| Appellate Court Caption | MB FINANCIAL BANK, N.A., Plaintiff-Appellee, v. TED & PAUL, LLC, FLORIN LELA, TUDOR BERCE, UNKNOWN OWNERS AND NONRECORD CLAIMANTS, Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-2077 |
| Filed | May 2, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's denial of defendants' petition for relief from a default judgment entered for plaintiff in a mortgage foreclosure action was reversed, notwithstanding the fact that plaintiff mortgagee had already purchased the property and sold it to a third party and service of process on two individual defendants appeared to be proper, since the return of service showing that the mortgagor, a corporation, was served by service on the corporation's agent was challenged by affidavits asserting that the person served was not an agent for receipt of service but the trial court failed to conduct an evidentiary hearing to resolve that factual issue; therefore, the cause was remanded for such a hearing. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CH-26861; the Hon. Jean Pendergast Rooney, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Wesley E. Johnson, of Goodman Law Offices, LLC, of Chicago, for appellants.

Eric S. Rein and Megan M. Mathias, both of Horwood, Marcus & Berk, Chtrd., of Chicago, for appellee.

Panel

JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion.
Presiding Justice Lavin and Justice Pucinski concurred in the judgment and opinion.


**OPINION**

¶ 1    Following the entry of a default judgment in a mortgage foreclosure action against defendants-appellants Ted & Paul, LLC, Florin Lela and Tudor Berce (defendants or as named), as obtained by plaintiff-appellee MB Financial Bank, N.A. (plaintiff), the subject property was eventually sold to a third party and confirmed by court order. In response, defendants filed a petition for relief from judgment, which was denied. Defendants appeal, contending that the trial court erred in denying their petition due to lack of personal jurisdiction, and ask that we reverse the trial court's order. For the following reasons, we reverse and remand.

¶ 2                              BACKGROUND

¶ 3    On August 4, 2009, plaintiff filed a "Complaint to Foreclose Commercial Mortgage and For Other Relief" against defendants regarding commercial property located at 5351 North Damen Avenue in Chicago. This cause, which is the underlying cause in the instant appeal, was assigned case number 09 CH 26861 (the 61 case). On the same date, plaintiff filed a second, similar complaint to foreclose against defendants regarding a different property. That cause, which is not subject to the instant appeal, was assigned case number 09 CH 26866 (the 66 case). Plaintiff then filed a motion to appoint E. L. Johnson Investigations as a special process server. The trial court granted plaintiff's motion and appointed E. L. Johnson Investigations to be the special process server for both cases.

¶ 4    Regarding the 61 case, which, again, is the underlying cause in the instant appeal, on March 5, 2010, plaintiff filed a "Motion for Order of Default," seeking an order of default against defendants for their failure to appear, answer or respond to the complaint. To this motion, plaintiff attached three separate documents each entitled "Summons and Complaint Affidavit." The first was for defendant Ted & Paul, LLC; it was signed by Vince Soto from E. L. Johnson Investigations, dated September 11, 2009, and stated that corporate service was completed upon Mariana Berce, a 56-year-old white female, as that corporation's agent. The

second was for defendant Tudor Berce; it was again signed by Soto, dated September 11, 2009, and stated that abode service was completed upon Mariana Berce, with the same physical description. And, the third summons and complaint affidavit was for defendant Florin Lela; it, too, was signed by Soto and dated September 11, 2009, and stated that personal service was completed on defendant Lela, a 40-year-old white female.

¶ 5      On March 24, 2010, the trial court granted plaintiff's motion and entered an order for default against defendants. The court found that defendants "were served with Summons and Complaint on September 11, 2009; and, therefore, [they] are now in default for failure to timely appear, answer or otherwise plead to [p]laintiff's Complaint." The trial court then entered a judgment of foreclosure and sale, stating that it "specifically [found] service of process in each instance was properly made in accordance with the [Illinois] Code of Civil Procedure," and that it had "jurisdiction over all the parties hereto and the subject matter presented herein." The court noted that the total balance due on the property was $2,832,708.17, and that defendants could be personally liable for any deficiency, which plaintiff had the right to seek. The court gave defendants until June 22, 2010 to redeem the property.

¶ 6      Defendants did not redeem the property. Accordingly, a judicial sale was held and plaintiff purchased the property for $700,000, leaving a deficiency of $2,196,969.57. The trial court entered an order approving the report of sale and distribution and, per plaintiff's decision not to pursue collection, no deficiency judgment was entered. Then, on October 19, 2010, plaintiff sold the property to Ballina Development, Inc.[1]

¶ 7      On April 2, 2012, defendants filed a petition for relief from judgment pursuant to section 2-1401 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2010)), seeking relief from the trial court's March 24, 2010 order of default and judgment of foreclosure and sale. To their petition, defendants attached copies of the three "Summons and Complaint Affidavits" from the underlying 61 case, as well as copies of three "Summons and Complaint Affidavits" from the 66 case. Among the summonses from the 66 case, the first was for defendant Ted & Paul, LLC; it was signed by Vince Soto from E. L. Johnson Investigations, dated August 29, 2009, and stated that corporate service was completed upon defendant Berce, a 50-year-old white male, as that corporation's agent. The second was for defendant Berce, personally; it was signed by Soto, dated August 31, 2009, and stated that personal service was completed upon him, with the same physical description. And, the third summons and complaint affidavit in the 66 case was for defendant Lela; it, too, was signed by Soto and dated August 31, 2009, and stated that personal service was completed on defendant Lela, this time described as a 38-year-old Hispanic female.

¶ 8      In addition to the six summons and complaint affidavits, defendants also attached three affidavits to their section 2-1401 petition. Defendant Berce provided an affidavit stating that he was not served with a summons or complaint in the 66 case, and that he did "not believe" he was ever served in the 61 case. He also attested that Mariana Berce, his wife, has never

_____

[1]Ballina Development, Inc., which bought the property for $700,000, is not a party to this appeal.

-3-

been an agent of defendant Ted & Paul, LLC. Mariana Berce provided an affidavit stating that she was not served with a summons or complaint in the 61 case, that she has never been an agent of defendant Ted & Paul, LLC, and that she was 44 years old in September 2009. And, defendant Lela provided an affidavit stating that he is male and that he was not served with a summons or complaint in either the 61 or the 66 case.

¶ 9 Based on all this, defendants asserted that, as evidenced by "significant inconsistencies and errors in the affidavits" of service, they "were not actually served" and, thus, the trial court's order of default and judgment of foreclosure and sale were void *ab initio* since the court lacked personal jurisdiction over them due to improper service. In its response to defendants' petition, plaintiff attached a copy of the real estate sale and purchase agreement for the sale of the property (in the underlying 61 case) by plaintiff[2] to Ballina Development, Inc., dated October 19, 2010 for the amount of $700,000, as well as a copy of the special warranty deed for the property identifying it as the grantor and Ballina Development, Inc., as the grantee, with a stamp showing this deed had been recorded with the Cook County recorder of deeds. Via these documents, plaintiff argued that, because the property had been sold to a *bona fide* purchaser, defendants' petition was barred by section 2-1401(e) and, because defendants filed their petition more than two years after the court's March 24, 2010 orders from which they now sought relief, the petition was also barred by section 2-1401(c).

¶ 10 Upon consideration of defendants' petition for relief from judgment and plaintiff's response, the trial court denied defendants' petition, stating that it based its decision "on the briefs and § 401(e)."

¶ 11                                          ANALYSIS

¶ 12 As a threshold matter, the parties agree that the appropriate standard of review here is *de novo*. They are correct. When a trial court enters either a judgment on the pleadings or a dismissal in a section 2-1401 proceeding, that order is reviewed on appeal *de novo*. See *People v. Vincent*, 226 Ill. 2d 1, 18 (2007). In the instant case, as the parties note, the trial court denied defendants' section 2-1401 petition based on the briefs before it; the court did not hold any sort of evidentiary hearing but, rather, ruled based on the pleadings alone. Accordingly, *de novo* review should be applied. See *Vincent*, 226 Ill. 2d at 17-18 (explaining the shift from abuse of discretion standard to *de novo* standard in such circumstances); see also *OneWest Bank, FSB v. Hawthorne*, 2013 IL App (5th) 110475, ¶ 19 (where party appealed denial of petition for relief from judgment of foreclosure and sale and order approving sale pursuant to section 2-1401, *de novo* standard of review applied).

¶ 13 On appeal, defendants contend that their petition for relief from judgment should not have been denied. The main crux of their argument focuses on the trial court's reliance on section 2-1401(e). They assert that plaintiff has no basis to raise a *bona fide* purchaser defense since this is a right belonging to Ballina Development, Inc., and not plaintiff; that no *bona fide* purchaser has been identified; and that, even if there was a *bona fide* purchaser

---

[2]Plaintiff is identified in this document, as well as in the special warranty deed, as MB841, LLC.

of the property in question, this does not preclude their right to relief from judgment against plaintiff because the trial court did not have personal jurisdiction over them. In addition, defendants argue that, since there was no dispute that service was improper, their petition was further not barred by the two-year statute of limitations as set forth in section 2-1401(c). For its part, plaintiff asserts that the trial court's decision here was proper because the relief defendants request is not available since the property has been sold to a *bona fide* purchaser without any evidence on the face of the record as to improper service and, thus, as to any lack of jurisdiction over them. Moreover, plaintiff claims that, regardless, because defendants waited more than two years to file their petition for relief from judgment, it would have been properly denied pursuant to section 2-1401(c), as well.

¶ 14 The existence of a *bona fide* purchase here and the impact of the two-year statute of limitations of section 2-1401(c) are really only secondary matters. Instead, the primary issue is that raised by defendants at the trial level in their section 2-1401 petition, namely, whether they were properly served by plaintiff, thereby permitting the trial court to have the necessary jurisdiction over them to effectuate the orders it issued herein. Again, the trial court found as much, but based solely on the pleadings before it. Because, upon review of the circumstances of the instant appeal as well as the facts in the record before us, we feel that this was questionable, at least with respect to one of the defendants, we must conclude that reversal of the trial court's denial of defendants' section 2-1401 petition and remand for an evidentiary hearing are required.

¶ 15 Section 2-1401 of the Code provides a mechanism for a party to belatedly challenge and avoid a trial court's final judgment. That is, it creates an exception to the general rule that a court cannot review its own judgment after the expiration of 30 days from the date of entry. See *Malkin v. Malkin*, 301 Ill. App. 3d 303, 310 (1998). Generally, the party filing a section 2-1401 petition must prove up three elements in order to succeed: the existence of a meritorious defense or claim, due diligence in pursuing that claim before judgment, and due diligence in pursuing the claim or defense after judgment. See *Malkin*, 301 Ill. App. 3d at 310. Even so, section 2-1401(c) warns that an action under this portion of the Code must be filed not later than two years after the entry of the original order or judgment. See 735 ILCS 5/2-1401(c) (West 2010).

¶ 16 In the instant cause, defendants' section 2-1401 petition sought relief from the trial court's order of default and judgment of foreclosure and sale more than 30 days from the date of their entry. The basis of their petition was their claim that they were never served by plaintiff with the required summonses and thus, the court lacked personal jurisdiction over them and its orders were void. Essentially, then, defendants' petition comprises a motion to quash service. A motion to quash for lack of jurisdiction that is made more than 30 days after final judgment seeks relief similar to that of a regular section 2-1401 petition–to belatedly undo, or avoid, the final judgment. See *OneWest Bank, FSB v. Topor*, 2013 IL App (1st) 120010, ¶¶ 12-15 (discussing the relationship between a motion to quash service and a section 2-1401 petition).

¶ 17 In *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104-05 (2002), our state supreme court held that a pleading to challenge a void judgment based on invalid service must be brought under section 2-1401. See also *Topor*, 2013 IL App (1st) 120010, ¶ 14. And,

recognizing that a void judgment may be attacked at any time, even far more than two years after its entry, the supreme court held that some of the general requirements for a valid section 2-1401 petition cannot, and do not, apply to a petition to invalidate service of process. See *Sarkissian*, 201 Ill. 2d at 104; see also *Topor*, 2013 IL App (1st) 120010, ¶ 14. In particular, it found that a party who files a section 2-1401 petition challenging a void judgment in the nature of a motion to quash (*i.e.*, attacking the validity of service) does not need to allege the general elements of either a meritorious defense or due diligence, and may bring the petition at any time, not just within the two-year limitations period set forth in section 2-1401(c). See *Sarkissian*, 201 Ill. 2d at 104; see also *Topor*, 2013 IL App (1st) 120010, ¶ 14 (citing *Protein Partners, LLP v. Lincoln Provision, Inc.*, 407 Ill. App. 3d 709, 715 (2010), which notes that an untimely postjudgment motion must be viewed as a section 2-1401 motion on appeal because this is the only means a party may use once the 30 days has expired). Applying *Sarkissian* here, not only do we not need to discuss whether defendants satisfied the general elements in order to prove up their section 2-1401 petition since they are irrelevant (and which, in fact, neither party addressed on appeal), but we also do not need to discuss the parties' arguments regarding the two-year bar of section 2-1401(c), since it, too, does not apply.[3]

¶ 18       With that said, we turn now to our recent decision of *Deutsche Bank National Trust Co. v. Brewer*, 2012 IL App (1st) 111213, which is very similar to the instant cause and provides much guidance here. In *Brewer*, the plaintiff bank filed a complaint against the defendant property holder seeking to foreclose her mortgage. The plaintiff served the defendant via publication. When she did not respond, the trial court entered a default judgment and ordered a judicial sale of the property, which was sold to the plaintiff. Thereafter, the defendant moved to quash the service of process by publication, arguing that the plaintiff did not meet the requirements for this type of service and, thus, that the trial court never acquired personal jurisdiction over her and its orders were void. The trial court denied the motion to quash. See *Brewer*, 2012 IL App (1st) 111213, ¶¶ 5-10.

¶ 19       On appeal, while the defendant argued that the trial court did not have jurisdiction over her when it entered its final judgment, the plaintiff argued that the reviewing court did not need to address this because section 15-1509 of the Illinois Mortgage Foreclosure Law barred any challenge to the foreclosure and sale. See *Brewer*, 2012 IL App (1st) 111213, ¶ 13. After reviewing section 15-1509, which states that any vesting of title by deed shall bar all claims of parties to the foreclosure, we nonetheless directly disagreed with the plaintiff's claims that the statute barred the defendant from contesting the sale of the property even if the trial court

---

[3]We recognize that the recent case of *U.S. Bank National Ass'n v. Prabhakaran*, 2013 IL App (1st) 111224, held that section 2-1401 petitions are generally barred by section 15-1509 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1509 (West 2008)) after judicial confirmation of the sale of the property. However, *Prabhakaran* did not involve a section 2-1401 petition based solely on a lack of jurisdiction concerning service of process, as did defendants' section 2-1401 petition did herein. This critical contrast makes *Prabhakaran* distinguishable and inapplicable to the instant cause. See *Topor*, 2013 IL App (1st) 120010, ¶ 12 n.1 (distinguishing *Prabhakaran* in the same manner).

lacked personal jurisdiction over her when it entered the judgment approving the sale. See *Brewer*, 2012 IL App (1st) 111213, ¶ 15. This is because we found the basic legal principle that a judgment entered without jurisdiction over the parties is void *ab initio* is one that cannot be overcome. See *Brewer*, 2012 IL App (1st) 111213, ¶ 15. Thus, not even section 15-1509 could protect a *bona fide* purchaser when the underlying foreclosure and sale orders were void because the mortgagor was never properly served. See *Brewer*, 2012 IL App (1st) 111213, ¶ 15 (therefore, section 15-1509's protection applies only to valid judgments entered with jurisdiction over the parties). Accordingly, we concluded that the defendant's jurisdictional challenge to the trial court's judgment–even though the property had been sold–was not barred. See *Brewer*, 2012 IL App (1st) 111213, ¶ 15 (holding that foreclosure judgments are not meant to be effective and deprive owners of their properties when the trial court lacks personal jurisdiction over the owners).

¶ 20  Having so held, we were then left with the question of the propriety of service, *i.e.*, had the plaintiff bank adequately served the defendant mortgagor in order to effectuate personal jurisdiction over her? The trial court had found that the plaintiff met the requirements for service by publication (the chosen method of service in that cause); this is why it had denied the defendant's motion to quash. See *Brewer*, 2012 IL App (1st) 111213, ¶ 17. However, after reviewing the strict requirements of service by publication, as well as the facts in the record regarding the plaintiff's actions in this regard, we disagreed with the trial court's finding. Instead, we reviewed the affidavits filed by the plaintiff in support of its motion for service by publication, as contained in the record, and noted that they failed to identify who attempted to serve the defendant, which is a requirement for this type of service. See *Brewer*, 2012 IL App (1st) 111213, ¶¶ 20-21 (when service is by publication, an affidavit from the person making service must be provided and must specify the steps taken to effect service). Thus, the plaintiff bank had not complied with the requirements for service of process by publication. Accordingly, we concluded that, because this lack of proper service of the defendant translated into a lack of personal jurisdiction over her, the trial court erred when it denied her motion to quash. See *Brewer*, 2012 IL App (1st) 111213, ¶ 31 (holding that, without jurisdiction over the mortgagor, the entry of default and the judgment approving the sale of the mortgagor's property were void and remand was required).

¶ 21  The instant cause places us in the same predicament in which we found ourselves in *Brewer*. Having already discussed that we are to treat defendants' section 2-1401 petition for relief from judgment due to lack of personal jurisdiction as a motion to quash, the fact pattern and legal argument are virtually identical: plaintiff bank sought to foreclose on defendants' mortgage; it claimed it properly served the defendants; and, when they did not respond, the trial court entered a default judgment and ordered a judicial sale of the property, which was sold to plaintiff. Thereafter, just as the defendant in *Brewer*, defendants here sought relief from these orders, arguing that they were not properly served and, thus, the court never acquired personal jurisdiction over them and its orders were void, while plaintiff argued that defendants' claims were barred since the property had been sold. And, just as the trial court in *Brewer*, the trial court in the instant cause, without more, denied relief.

¶ 22  In light of the strikingly similar factual circumstances and legal arguments, we find no reason to depart from the judicial reasoning and framework we developed in *Brewer*.

Applying the principles we established in that cause, we note that, because a judgment entered without jurisdiction over the parties is void *ab initio*, plaintiff's argument here does not hold water; not even the fact that the property in question has been sold–first, to plaintiff and later, to Ballina Development, Inc.–protects plaintiff if the underlying default judgment and foreclosure and sale order were void because defendants were never properly served. Accordingly, just as in *Brewer*, we are left with the question of propriety of service. As we noted at the outset of our discussion, it all comes down to this: did plaintiff adequately serve defendants in order to effectuate personal jurisdiction over them?

¶ 23    In the instant cause, the record reflects that plaintiff allegedly served each of the three defendants here differently: defendant Ted & Paul, LLC, the listed mortgagor, through corporate service via Mariana Berce, whom plaintiff insists was its agent; defendant Berce through abode service via Mariana Berce as his wife; and defendant Lela through personal service. As such, each situation involves its own different, and critical, implications.

¶ 24    For example, beginning with defendant Lela, we note that, in the context of personal service, return of summons is *prima facie* proof of proper service. See *Winning Moves, Inc. v. Hi! Baby, Inc.*, 238 Ill. App. 3d 834, 838 (1992); accord *Freund Equipment, Inc. v. Fox*, 301 Ill. App. 3d 163, 166 (1998). Courts are required to indulge in every reasonable presumption in favor of the return, and the uncorroborated testimony of the party upon whom service is made is not enough to set aside this evidence. See *Winning Moves*, 238 Ill. App. 3d at 838; accord *Freund*, 301 Ill. App. 3d at 166 (party's uncorroborated testimony that he was never served "is insufficient to overcome the presumption of service"); see also *Paul v. Ware*, 258 Ill. App. 3d 614, 617-18 (1994) (to attack underlying default judgment on ground that court never obtained personal jurisdiction over the defendant, evidence must be presented to impeach the affidavit of service; an uncorroborated defendant's affidavit simply stating that he was not personally served is insufficient to overcome presumption of valid service and default judgment will not be set aside on only this evidence).

¶ 25    Here, the record contains a copy of the return of summons plaintiff, via investigator Soto, personally served on Lela. In opposition, defendants assert that this is clearly incorrect and, essentially, fraudulent because the summons in the 61 case differs from that in the 66 case since the former lists Lela as a white female and the latter lists Lela as an Hispanic female, and because Lela is not a female at all; he is a male. However, the only evidence of this presented by defendants is Lela's affidavit–his uncorroborated, incredibly brief affidavit stating, conclusorily, that he was not served in the 61 case and he is male. His evidence consisted of nothing else but his flat denial that plaintiff, via Soto, served him. Again, in the context of personal service, without more, Lela's bare affidavit is simply insufficient to set aside the trial court's determination that plaintiff properly served him. Therefore, we find that the trial court had personal jurisdiction over defendant Lela and, thus, its default judgment and order of foreclosure and sale regarding the property, as to him, was properly entered.

¶ 26    Next, we examine plaintiff's alleged service of defendant Berce via abode service on Mariana Berce (as his wife). Unlike with personal service, abode service, also referred to as substitute service, does not carry the same presumption of validity since it is not the defendant himself being served, but someone in his stead living at his abode. See *State Bank of Lake Zurich v. Thill*, 113 Ill. 2d 294, 309 (1986). Thus, the return or affidavit of service

must affirmatively state that a copy of the summons was left at the usual abode with a family member over the age of 13, that this family member was informed of the content of the summons, and that the process server sent a copy of the summons in a sealed envelope with postage fully paid and addressed to the defendant at his usual place of abode. See *Thill*, 113 Ill. 2d at 310. The failure to recite any of these renders the abode service defective. See *Thill*, 113 Ill. 2d at 310 (because the in-person service of a party is, essentially, being substituted by service to another on the party's behalf, strict compliance with each of these requirements is mandatory). While the certificate of the process server that he sent the copy of summons is evidence that he did so, this may be overcome by contradictory affidavit. See *Thill*, 113 Ill. 2d at 312. Therefore, where the return of abode service is challenged by affidavit, and there is no counteraffidavit to address this challenge, the return of service itself is not enough evidence; instead, the affidavit must be taken as true and the service of summons must be quashed. See *Thill*, 113 Ill. 2d at 310; see also *Clinton Co. v. Eggleston*, 78 Ill. App. 3d 552, 555-57 (1979) (quashing substituted service where the defendant's affidavit attacked this service as improper for various reasons and no counteraffidavit was presented to dispute the defendant's challenge); accord *Harris v. American Legion John T. Shelton Post No. 838*, 12 Ill App. 3d 235, 237 (1973).

¶ 27 In the instant cause, the return of service as contained in the record demonstrates that, when serving defendant Berce with abode service via Mariana Berce, investigator Soto recited the three mandatory requirements of abode service. Under this type of service, then, defendants had an opportunity to attack Soto's service as improper with an affidavit. In this way, Soto's return of service alone, without a counteraffidavit from plaintiff to address defendants' challenge in this regard, would not have been enough for plaintiff to prevail on the service issue, since the affidavit would have been taken as true and service quashed.

¶ 28 Defendants did attach affidavits to their section 2-1401 petition regarding Soto's abode service on defendant Berce: one from Berce himself and one from Mariana. And, there was no counteraffidavit provided from Soto or plaintiff to address defendants' challenge. However, upon examination of the affidavits defendants provided, any court would be hard-pressed to say that they sufficiently attacked the propriety of the abode service that occurred here with any credible merit. Instead, in another unbelievably short affidavit submitted by defendants, while Berce unequivocally states that he was not served with a summons or complaint in the 66 case, he does not say the same regarding service in the case at issue. Rather, he states only that he does "not believe" he ever received a summons in the mail for the 61 case. In addition to this less-than-compelling statement, he never affirmatively rebuts any of the three elements of abode service that the return verified. For example, Berce does not rebut that Soto properly left a copy of the summons or complaint at Berce's usual abode with Mariana, a family member over the age of 13; he does not challenge that Soto properly informed Mariana of the content of the summons; and he never denies that Soto sent a copy of the summons in a sealed envelope with postage fully paid and addressed to him at his home. Moreover, even considering Mariana's affidavit, this, too, does little to attack plaintiff's abode service as improper. While Mariana does state that *she* was not served with a summons or complaint in the instant case, this is all she asserts. Just like Berce's, Mariana's extremely limited affidavit does not address, let alone attack, any of the

requirements of abode service. For example, she does not claim that Soto did not properly serve *Berce* pursuant to abode service *via her*. Nor does she aver that Soto did not leave a copy of the summons in the instant case at their home, that this was not Berce's usual abode, that she was not his family member, that Soto did not inform her of the content of the summons, or that Soto did not send a copy of the summons in a sealed envelope with postage fully paid and addressed to the defendant at his home. Clearly, both Berce's and Mariana's affidavits are simply insufficient to effect any real challenge to Soto's return of abode service. Based on our review of this return, which is contained in the record, and in light of defendants' failure to provide any challenge to it via at least one substantive and challenging affidavit from the person or persons served, we must hold that plaintiff properly served defendant Berce via abode service. See *Thill*, 113 Ill. 2d at 310, 312 (where return or affidavit of service affirmatively states the three abode service requirements, and since certificate of process server that he sent copy of summons is evidence that he did so, it is assumed, without contradiction, that abode service was proper). Accordingly, then, the trial court here had personal jurisdiction over defendant Berce and, thus, its default judgment and order of foreclosure and sale regarding the property, as to him, was also properly entered.

¶ 29　　Although we have just concluded that plaintiff properly served defendant Lela via personal service and defendant Berce via abode service and, thus, that the trial court properly had personal jurisdiction over them, there is one last defendant in this cause: Ted & Paul, LLC. Just as plaintiff chose to serve defendant Lela differently than it served defendant Berce, plaintiff served defendant Ted & Paul, LLC, in yet another manner: via corporate service. A private corporation may be served by leaving a copy of the process (*i.e.*, the summons or complaint) with its registered agent or any officer or agent of the corporation found anywhere in the state. See *Dei v. Tumara Food Mart, Inc.*, 406 Ill. App. 3d 856, 862 (2010); see also *Island Terrace Apartments v. Keystone Service Co.*, 35 Ill. App. 3d 95, 98 (1975). Generally, a return of service is *prima facie* evidence that proper service was effected. See *Dei*, 406 Ill. App. 3d at 862; *Island Terrace*, 35 Ill. App. 3d at 98. However, when a corporation is sued, a return is not conclusive as to the fact of agency. See *Dei*, 406 Ill. App. 3d at 862; *Island Terrace*, 35 Ill. App. 3d at 98. Instead, for service of process on a corporation to have been properly made upon an agent of the defendant, the agent must have had actual authority to accept service on behalf of the corporation. See *Dei*, 406 Ill. App. 3d at 862; *Island Terrace*, 35 Ill. App. 3d at 98. Accordingly, even in the face of a return, a challenge to or denial of agency within the corporate service context can call the ultimate issue of the propriety of this service and, consequently, whether the trial court had personal jurisdiction over the corporation, into question. See *Island Terrace*, 35 Ill. App. 3d at 98.

¶ 30　　In the instant cause, the record contains investigator Soto's return of service on defendant Ted & Paul, LLC. It names defendant Berce as the corporation's registered agent, but states that service was upon Mariana, whom Soto lists as "agent." While this return would generally be enough proof that service was properly completed on defendant Ted & Paul, LLC, defendants clearly challenged the question of Mariana's agency in their section 2-1401 petition, specifically denying that she had the necessary actual authority to accept service on behalf of the corporation. In her affidavit, Mariana states not only that she was never served

with a summons or complaint in this cause (in any capacity), but also that she has never been a director, officer, agent or registered agent of defendant Ted & Paul, LLC. In addition, defendant Berce states in his affidavit that he is the president of that corporation and confirms that Mariana has never been a director, officer, agent or registered agent of it.

¶ 31    We find ourselves in a precarious position here. While there is a return of service showing that defendant Ted & Paul, LLC, was served via corporate service upon Mariana as its agent, we have two affidavits challenging Mariana's capacity as that corporation's agent. Under these circumstances, the return is not conclusive and, thus, plaintiff's service of defendant Ted & Paul, LLC, has now been placed into question. Moreover, whether someone is a corporate agent is a factual question. See *Island Terrace*, 35 Ill. App. 3d at 99. Here, whether Mariana was an agent of defendant Ted & Paul, LLC, for the purpose of receiving service of process on behalf of that corporation is a question of fact–one best left for a trial court to determine. See *Island Terrace*, 35 Ill. App. 3d at 99. In turn, then, since an issue has been raised as to the propriety of plaintiff's service of one of the defendants, an issue, too, has been raised as to the ultimate question of whether the trial court had personal jurisdiction to effectuate its judgment of default and order of foreclosure and sale in this cause.

¶ 32    Accordingly, whereas we found that plaintiff properly served defendants Lela and Berce, we find that a question of fact remains with respect to the propriety of plaintiff's service of defendant Ted & Paul, LLC. Thus, while the trial court properly had personal jurisdiction over the former two defendants upon which to enter its judgment of default and order of foreclosure and sale, it is unclear whether it did so regarding this last defendant. The trial court never addressed the matter of the propriety of corporate service on defendant Ted & Paul, LLC, with respect to the question of Mariana's agency. Because, in light of the circumstances, this is a question of fact, we find that the trial court must do so via an evidentiary hearing discussing all the pertinent matters regarding the question of agency. This is particularly critical due to the fact that, of all the defendants in this matter, it is defendant Ted & Paul, LLC, that is listed as the mortgagor of the property at the center of this appeal.

¶ 33                                    CONCLUSION

¶ 34    In conclusion, then, we find that the trial court's denial of defendants' section 2-1401 petition was in error as a question of fact remains and, thus, that a further hearing is required as described herein.

¶ 35    Reversed and remanded.

-11-